# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRANK SLAUGHTER,                                         )
          **Plaintiff,**                              )
                                              )
            **v**                                       )    **2:11-cv-880**
COUNTY OF ALLEGHENY, ALLEGHENY            )
**COUNTY JAIL**, **RAMON RUSTIN** *in his Official and*   )
*individual capacities;* **ROBYN MCCALL** *in her official*   )
*and individual capacities;* **JAMES DONIS** *in his official*   )
*and individual capacities; and* **WILLIAM EMERICK**   )
*in his official and individual capacities*             )
               **Defendants.**                       )

## MEMORANDUM OPINION AND ORDER OF COURT

       In this case, Sergeant Frank Slaughter alleges discrimination and retaliation by his

supervisors in the course of his employment at the Allegheny County Jail.  Now pending is

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 47), with brief in

support, filed by the County of Allegheny (the "County") [1], Warden Rustin, Captain McCall,

Major Donis, and Assistant Warden Emerick (collectively, the "Individual Defendants").  Also

pending is a MOTION TO STRIKE DEFENDANTS' SECOND MOTION FOR SUMMARY

JUDGMENT (ECF No. 49), filed by Plaintiff Frank Slaughter, to which Defendants have filed a

response and Plaintiff filed a reply.  In the exercise of caution, Plaintiff has also filed a response

and brief in opposition to Defendants' summary judgment motion, in the event that it is not

stricken.  Defendants subsequently filed a Concise Statement of Material Facts ("CSMF") and

Plaintiff filed a response thereto. [2]  The motions are ripe for disposition.

---

[1] Allegheny County Jail is a sub-unit of Allegheny County. It has no separate corporate identity and therefore lacks the capacity to be sued. *Kipp v. Allegheny County*, 2012 WL 1463309 at *3 (W.D. Pa. April 27, 2012).  Plaintiff has apparently recognized this and no longer asserts claims against "Allegheny County Jail."
[2] The Court notes that Plaintiff submitted an extensive appendix in opposition to the misnamed "motion to dismiss" filed by the former counsel for Defendants.  The Court will consider all documents provided by Plaintiff in resolving the instant motions.

Defendants have repeatedly neglected to adhere to the requirements set forth in Local Rule 56 for filing summary judgment motions. In December 2012, the former attorney for Defendants filed a "Motion to Dismiss" accompanied by a two-paragraph CSMF which wholly failed to comply with the requirements of Local Rule 56. In addition, Defendants failed to respond to the extensive counter-statement submitted by Plaintiff.

Upon review of the filings, the Court developed significant concerns regarding the legal merit of many of the claims being asserted by Plaintiff and the scope of a potential trial. Accordingly, on March 11, 2013 the Court issued an extensive Memorandum Order which denied Defendants' motion "due to the failure of former defense counsel to comply with the Court's Local Rules and procedures for filing a summary judgment motion," but put the parties on notice of its intent to enter summary judgment independent of the motion pursuant to Fed. R. Civ. P. 56(f). The Court ordered Slaughter to clearly identify: (1) each claim he intends to pursue; (2) the legal theory underlying each claim; (3) the specific Defendant(s) on each claim; and (4) the specific conduct of each Defendant which supports such claim. The Court then provided an opportunity for the parties to file renewed summary judgment motions "(with memorandum of law, CSMF and exhibits as necessary)."[3]

Slaughter filed a Statement of Claim (ECF No. 43). Defendants then filed the instant summary judgment motion. Unfortunately, this motion again failed to comply with the procedures in Local Rule 56 for filing a summary judgment motion because defense counsel -- again -- neglected to file a CSMF. In addition, Defendants failed to provide specific, pinpoint

---

[3] The Court specifically articulated many of its concerns and provided citations to relevant case law authority. In their most recent filings, neither side has attempted to apply -- or distinguish -- the cases cited by the Court.

citations to undisputed evidence of record and instead, simply attached to their brief the same

appendix compiled by prior counsel in support of the "Motion to Dismiss."

Plaintiff filed the instant Motion to Strike, which correctly identified these flaws.

Defense counsel filed a non-sensical response, which failed to acknowledge his violations of

Local Rule 56 and the Court's March 11 Memorandum Order. Belatedly, Defendants also filed a

CSMF (ECF #50). Upon review, the CSMF fails to cure the error. It contains only thirteen (13)

conclusory and often irrelevant statements; fails to provide a factual foundation for the analysis

of Plaintiff's claims; and makes only vague references to supporting documentation. For

example, Defendants cite to their own pleadings and to "Discovery Document #70," which has

never been identified or provided to the Court or Plaintiff. As another example, CSMF #13

reflects in its entirety: "Plaintiff failed to demonstrate any constitutional violation(s). PACER;

Doc. #47 and Doc. #48 Exhibits A,B,C,D,E,F,G,H,I,J,K,L,M,N,O,P,Q,R,S,T,U,V,W,X,Y." To

say the least, this does not constitute a concise statement of material fact and does not aid the

Court in its resolution of this matter. This was Defendants' second "bite at the apple" after the

Court reprimanded prior counsel for failing to comply with Local Rule 56. Defendants' filings

fall far below the standard required by Local Rule 56.

In accordance with the foregoing, Plaintiff's MOTION TO STRIKE DEFENDANTS'

SECOND MOTION FOR SUMMARY (ECF No. 49) will be **GRANTED** and Defendants'

Motion for Summary Judgment will be **STRICKEN**.


That does not end the matter, however. As the Court commented in its prior

Memorandum Order, "a trial of this case, in its present posture, would be a lengthy, inefficient

and ineffective exercise." The Court has a gatekeeping obligation to prevent the waste of

judicial resources and the time of prospective jurors on claims that have no legal merit. The parties have been given notice and an opportunity to be heard regarding Fed. R. Civ. P. 56(f). The Court turns now to that analysis.

Factual Background

The chronology of events has been reconstructed from the parties' filings and must be viewed in the light most favorable to Plaintiff. Slaughter became employed by Allegheny County at the Jail in 1995 as a corrections officer. In 1997, he was promoted to Sergeant, First Line Supervisor. In 2006, Slaughter was terminated from his employment as a result of an altercation in which he called one fellow sergeant a "scared punk coward" and another altercation in which he tossed keys at another sergeant. However, he was reinstated after serving a 20-day suspension. A "last chance agreement" was executed in September 2006. In April 2007, Slaughter filed a charge of discrimination with the PHRC, which alleged that the termination of his employment was in retaliation for his opposition to African American employees being disciplined more severely than Caucasian employees.

On November 15, 2008, Slaughter reported disrespect and insubordination by white corrections officer Jialanella. Slaughter alleges Jialanella was never disciplined for this misconduct.[4] On January 23 and 24, 2009 Slaughter filed internal complaints that jail policies were not being equally applied to black officers, and their authority was being undermined. In March 2009, Slaughter requested that the disciplinary action and "last chance agreement" which had resulted from the 2006 incidents be removed from his file. Under County policy, employees are entitled to have such documents removed upon request after one year with no further

---

[4] On September 30, 2010 Jialanella was terminated for inciting a riot by using a racial slur on black inmates.

disciplinary action.  Although Defendant Emerick stated that he had ordered the removal of the documents, they were still in Slaughter's file at the time of Emerick's deposition in August 2012.

On March 19, 2010 Slaughter reported fifteen inmate complaints against Ryan, a white subordinate corrections officer.  The same day, Ryan was removed from his job on Level 5.  On April 3, 2010 Slaughter supplemented his report regarding Ryan to add further allegations of misconduct.  Slaughter contends that Ryan received no discipline as a result of his report.  However, Ryan was terminated in late 2010 or early 2011 for inmate abuse.

On April 30, 2010 Slaughter was informed by Assistant Deputy Warden Emerick that he would be reassigned from Level 5 to become a "Floater" who could be assigned anywhere in the jail facility.  Slaughter told Emerick at the time that he did not have a problem with the move.  Later, Slaughter believed that this move was hostile because other, less senior, sergeants were not subject to such a move.  Although Emerick allegedly stated that "all" of the sergeants would be moved around, only three other sergeants (Kengerski, Nort and Rubel)[5] were moved.  Slaughter also believes that this reassignment was discriminatory based on the body language and tone of voice when Emerick asked if he had a problem with the move.  On May 1, 2010 Slaughter received a commendation for his work on Level 5 from Captain Leon, who commented:  "I don't understand the reason for the move. . . ."

On June 3, 2010 Slaughter filed an internal complaint of retaliation against McCall for falsely writing him up for a number of (unspecified) infractions.  On June 16, 2010 Slaughter filed another internal complaint of discrimination to report several incidents of alleged racially discriminatory application of policies.  The only incident directly involving Slaughter was the failure to remove documents from his disciplinary file, as hereinabove discussed.

---

[5] Nort and Rubel are white.  The race of Kengerski is not stated.

On September 30, 2010 Slaughter filed an internal complaint of retaliation because a mural he had painted by pod 5MD had been painted over and Sergeant Kass got more support in improving the appearance of the Level than Slaughter had been given. On October 8, 2010 Slaughter filed a complaint against McCall, for allegedly having rudely returned documents to him (complaints which Slaughter intended to send to his union, but had been shoved under McCall's office door). On October 25, 2010 Slaughter filed a second formal charge of discrimination with the EEOC and PHRC. Slaughter also made other complaints on behalf of other African American officers, Taylor and Coleman.

In January 2011 Slaughter complained about the refusal to honor his seniority in post assignments – such that he was assigned to the employee entrance post. Slaughter contends that Warden Rustin made an agreement with the union that assignments would be made on the basis of seniority. However, the Warden denied Slaughter's grievance, stating that management has the "right to assign" sergeants to positions. Slaughter remains employed as a sergeant at ACJ.

As noted above, Slaughter filed two formal charges of discrimination. On April 10, 2007 Slaughter filed a complaint of discrimination with the PHRC. Plaintiff Exhibit 4. The EEOC issued a dismissal and right to sue letter on December 3, 2008. Slaughter did not file a lawsuit at that time. Slaughter is not pursuing any claims which arise out of the 2007 charge.

On October 25, 2010, Slaughter filed another charge of discrimination with the EEOC and PHRC.[6] Plaintiff Exhibit 23. The narrative section of the charge alleged discrimination based on race and religion and in retaliation for engaging in protected activity.[7] Slaughter stated

---

[6] Slaughter alleged in the Complaint that he filed a charge of discrimination and retaliation in July 2010. Complaint ¶ 23. It appears that the July date is a mistake, for the following reasons: (1) the Complaint does not plead the October 2010 charge; (2) no July charge has been provided to the Court; (3) the October 2010 charge does not identify a charge in July 2010, even though it references an earlier PHRC complaint from 2007; and (4) Plaintiff's Statement of Claim tracks the language of the October 2010 charge.

[7] The check box for age discrimination was also marked.

that since September 2009 he had received five disciplinary actions; been denied tuition reimbursement, flex schedules, change of pass days and other (unspecified) conditions of employment; and in May 2010 had been "demoted from Assistant Unit Manager to Floater." Although Slaughter alleged harassment from 2008 through the present, he identified the earliest date of discrimination as September 10, 2009. The EEOC issued a dismissal and right to sue letter on May 27, 2011. The Complaint in this federal action was filed on July 5, 2011.

Discussion

The Statement of Claim filed by Slaughter has significantly narrowed the scope of this action. He now asserts the following: (1) hostile work environment from August 2008-present due to his race; and (2) retaliation for Slaughter's internal complaints under Title VII and the PHRA against Allegheny County. Slaughter also continues to assert claims under § 1983 against the Individual Defendants for conduct which allegedly occurred after July 6, 2009, in violation of his right to Equal Protection under the Fourteenth Amendment.

Slaughter's Statement of Claim attempts, for the first time, to assert PHRA "aiding and abetting" claims against the Individual Defendants. Such claims will not be considered because they were not pled in the Complaint.[8] *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 459 (3d Cir. 2003) (holding that claim failed "at the most basic level because it finds no support in the plain language of Horvath's complaint"); *Conseco Life Ins. Co. v. Smith*, 2013 WL 3285065 at *4 (D.N.J. 2013) ("A plaintiff cannot raise claims for the first time at the summary judgment stage, if they were

---

[8] Count 2 of the Complaint asserted a PHRA claim against only the County and the Jail. Counts 3-6 of the Complaint asserted only § 1983 claims against the Individual Defendants.

not included in their Complaint.") (citations omitted).  The Court will address the remaining claims seriatim.


A.  Hostile Work Environment

As an initial matter, Slaughter claims a hostile work environment relating back to 2008, based on the "continuing violation" theory.  In *Mandel v. M & Q Packaging Corp.*, the Court of Appeals explained:

> Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir. 2006) (explaining court may consider "entire scope of a hostile work environment claim ... so long as any act contributing to that hostile environment takes place within the statutory time period")).  A hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' " and "cannot be said to occur on any particular day." To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period.

706 F.3d 157, 165-66 (3d Cir. 2013) (citations omitted).  There is no longer a "permanency" requirement to establish a continuing violation.  Instead, the inquiry now is rather straight-forward – whether the alleged violations committed by Defendants were "discrete" (i.e., easy to identify) or "non-discrete" (i.e., taking place over time and/or behind the scenes or not actionable on their own).  *Rankin v. Smithburger*, 2013 WL 3550894 at *5 (W.D. Pa. July 11, 2013).

The applicable limitations period is 300 days prior to the dual-filed charge of discrimination on October 25, 2010.  Thus, Slaughter must point to an act occurring after December 27, 2009.  He has done so, as he alleges a demotion in May 2010.  That act is "discrete" because it is easy to identify and allegedly constitutes a separate actionable unlawful employment practice.  *Sarno v. Wal-Mart Stores E., L.P.*, 2012 WL 5880361 at *5 (D.N.J. Nov.

20, 2012) (citations omitted). The other alleged discriminatory actions described in Slaughter's October 2010 EEOC charge (five disciplinary actions, denial of tuition reimbursement, denial of flex schedules and change of pass days) are also "discrete" under this definition, such that they would not support a continuing violation theory. *Id.*

Nevertheless, *Mandel* also explains that "the incidents constituting a hostile work environment are part of one unlawful employment practice, [such that] the employer may be liable for all acts that are part of this single claim." 706 F.3d at 166. Slaughter's October 2010 EEOC charge alleges harassment and claims "continuing action."[9] Although the record does not reflect a linked pattern of actions, the Court will assume that Slaughter has adequately pled a continuing violation and will consider whether a reasonable jury could find in favor of Slaughter on the merits of this claim.

To succeed on a hostile work environment claim, Slaughter must establish that: 1) he suffered intentional discrimination because of his race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability. *Mandel*, 706 F.3d at 167. To determine whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 168.

The Court concludes that Slaughter cannot succeed on a racially hostile work environment claim. There is no evidence by which a reasonable jury could conclude that he was

---

[9] The Court notes that the alleged failure of the Individual Defendants to investigate Slaughter's internal protests – which forms the basis of his § 1983 claims – is not mentioned at all in the October 2010 charge.

discriminated against because of his race. To be sure, <u>Slaughter</u> made numerous reports of alleged race discrimination. However, there is absolutely no evidence of race-based conduct by Defendants. Notably, the alleged "demotion" affected Slaughter and two white sergeants. Indeed, Slaughter primarily contended that the demotion violated his seniority rights under the union contract. So, too, his allegation that a more-junior sergeant should have been assigned to the employee entrance post. Slaughter also attributed some of the alleged discrimination to his status as a licensed minister and/or the fact that he had won a house on a television program. Slaughter's remaining allegations involve disparate discipline (without identification of a similarly-situated comparator); undermining of his supervisory authority; and inconsistent adherence to policies for investigating internal complaints. These contentions are vague, conclusory and do not support an inference of race discrimination.

In addition, the Court concludes that no reasonable jury could find that the events complained of by Slaughter rose to the level of "severe and pervasive" conduct. Slaughter identifies only a handful of incidents over a period of several years. None of the alleged conduct was physically threatening or humiliating. Indeed, Slaughter has not even identified any offensive utterances made toward him. At most, Slaughter alleges that his senior managers failed to provide adequate support to him such that he felt that his authority was undercut, failed to investigate his grievances, and failed to strictly adhere to internal rules and regulations. Hostile work environment claims are not intended to be utilized as a tool for implementation of a general civility code or to attack "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In summary, the Court will **GRANT** summary judgment in favor of Defendants on Plaintiff's hostile work environment claim.

B. Retaliation

A retaliation claim is governed by different legal standards. Slaughter may establish a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) the employer subjected him to an adverse employment action after or contemporaneously with his protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006). In the Court's prior Memorandum Order, it expressed specific concerns regarding the "adverse employment action" and causation prongs of a retaliation claim, citing *Flaig v. Aladdin Food Management Services, LLC*, 2012 WL 5288716 (W.D. Pa. 2012), and the cases cited therein. Unfortunately, despite the Court's specific invitation, neither party has addressed the analysis in *Flaig*.

The first prong of the test is met. Slaughter has introduced evidence of protected activity, in that he made numerous internal complaints regarding alleged unequal application of County policies to black corrections officers beginning in January 2009; participated in the EEOC proceedings brought by another black officer in July 2009; and reported mistreatment of black inmates by a white corrections officer in March/April 2010.

The second prong of the test is met, at least in part. For the alleged conduct of Defendants to constitute an adverse employment action, Plaintiff must show that the new position was less desirable in its pay, hours, the type of work performed or prestige. *See Flaig*, 2012 WL 5288716 at * 4. Slaughter alleges that he was "demoted" to the Floater position in May 2010 and required to work the employee entrance post in January 2011. Slaughter also alleges that Defendants failed to remove disciplinary materials from his file, and denied him tuition reimbursement, use of a flex schedule, and a change of pass days. Defendants contend that Slaughter received tuition reimbursement in 2008, worked the same ten-hour flex schedule

as the other sergeants, and had Bid Pass days of Sunday and Monday (Defendants Exh. E).[10]

Viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that Slaughter's

contentions regarding his "demotion" from Assistant Unit Manager on Level 5 to "Floater" and

his assignment to the employee entrance post constitute adverse employment actions.

Slaughter must prove traditional "but-for" causation. *University of Texas Southwestern*

*Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). A plaintiff can satisfy the requisite causal link

in at least two ways: by demonstrating (1) that the temporal proximity between the protected

activity and the adverse action that is "so close as to be unduly suggestive" of causation,

*Williams v. Phila. Housing Auth*., 380 F.3d 751, 760; or, in the absence of temporal proximity,

(2) "timing plus other evidence," *id*., for example, that the employer "engaged in a pattern of

antagonism in the intervening period." *Flaig*, 2012 WL 5288716 at *5. A time gap of two

months is not unduly suggestive. *Id*. Plaintiff has not attempted to demonstrate a specific causal

link. Instead, the Statement of Claim merely avers in a conclusory manner that the alleged

discrimination "arose and/or intensified" after the protected activity and contends that there was

an "unwavering course of retaliatory conduct."

A review of the record demonstrates that there is no evidence of a causal connection –

with one narrow exception. The denial of tuition reimbursement apparently occurred in 2008;

Slaughter's report of insubordination by Jialanella was made on November 15, 2008; his internal

complaints of racial discrimination began in January 2009; the request to remove disciplinary

records from his file was made in March 2009; and his participation in the EEOC investigation

occurred in July 2009. These events were far too distant in time to infer a causal connection to

his demotion to Floater in May 2010 or his assignment to the employee entrance in January 2011

---

[10] Due to Defendants' failure to comply with Local Rule 56, Plaintiff was not required to admit or deny those
assertions. Plaintiff will have to make an appropriate evidentiary proffer prior to presenting such alleged "adverse
employment actions" to the jury.

and Slaughter has failed to demonstrate a pattern of antagonism in the intervening period. The dates of the "pass day" and "flex schedule" allegations were not established.[11] In sum, Slaughter's retaliation theory is not viable.

There is one narrow exception, however. Slaughter made an internal complaint about misconduct by white corrections officer Ryan on March 19, 2010 with a supplement on April 3, 2010. His reassignment to the Floater position occurred on April 30, approximately four weeks later. Viewed in the light most favorable to Plaintiff, a reasonable jury could infer a causal connection between these two events. Moreover, the events occurred within 300 days of Slaughter's EEOC charge of retaliation on October 25, 2010.

In summary, the retaliation claim will survive summary judgment, albeit in a very limited, targeted respect. Slaughter will be provided an opportunity to prove to the jury that the County violated Title VII and the PHRA by assigning him to the Floater position in retaliation for his internal complaints of misconduct by corrections officer Ryan. Slaughter will not be permitted to advance any other theory of retaliation and the evidence presented at trial must be narrowly tailored to be relevant to this discreet claim.


C.  § 1983 Claims vs. the Individual Defendants

In the Court's prior Memorandum Order, it expressed substantial doubts about the viability of the § 1983 claims and stated: "[N]umerous courts have held that an employment retaliation theory does not arise under § 1983, but supports only a Title VII claim. *See Price v. Delaware Dept. of Correction*, 40 F. Supp.2d 544, 558 (D. Del. 1999), and cases cited therein." Unfortunately, neither party has addressed the analysis in *Price*.

---

[11] In addition to demonstrating that these constitute adverse employment actions, Plaintiff will also have to make an appropriate evidentiary proffer regarding causation prior to presenting such contentions to the jury.

In *Price*, a black corrections officer alleged retaliation by prison officials after he made a complaint of racial discrimination. He attempted to pursue his retaliation theory under Title VII against the Department of Corrections and under § 1983 against the individual supervisors. The Court rejected this effort and dismissed the § 1983 claims. It explained, at length:

> [W]here there is no basis for a § 1983 claim other than the retaliatory conduct proscribed by Title VII, courts have held that the § 1983 claim cannot stand alone. For example, in *Lewis v. Delaware*, 986 F.Supp. 848, 857 (D. Del. 1997), the Court held that a § 1983 retaliation action is not actionable under the Equal Protection Clause, and is more properly remedied through Title VII. *See also Long v. Laramie County Community College District*, 840 F.2d 743, 752 (10th Cir. 1988) (holding that a theory of liability under federal law for retaliatory conduct does not come within § 1983, and supports only a Title VII claim); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) (holding that where defendants did not discriminate against plaintiff, and the only wrongful act was retaliation in violation of Title VII, Congress did not intend this violation to be the basis of a § 1983 claim); *Lightner v. Town of Ariton, Alabama*, 902 F.Supp. 1489, 1499 (M.D. Ala. 1995) (holding that plaintiff cannot maintain § 1983 action predicated on retaliation provision of Title VII); *Arnett v. Davis County School District*, No. 92–C–988W, 1993 WL 434053, at *4 (D. Utah Apr.5, 1993) ("a theory of liability for retaliatory conduct does not come within § 1983"); *Moche v. City University of New York*, 781 F.Supp. 160, 168 (S.D.N.Y. 1992) (holding that retaliation claims cannot be brought under § 1983 because they are exclusive to Title VII, but claims of intentional discrimination are actionable under § 1983 as violations of the Equal Protection Clause and stand independently of Title VII). Therefore, this Court grants judgment as a matter of law in favor of Defendants Hawthorne and Taylor for the claim of retaliation under § 1983. A claim of retaliation cannot be the sole basis for a § 1983 claim where there is no violation of the Constitution or federal law, other than the retaliation provision of Title VII.
>
> This Court's holding is consistent with the recent case of *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. 1996). In that case, the Third Circuit held that individual employees cannot be held liable under Title VII. *Id.* at 1077. Holding the individual Defendants liable under § 1983 in the case at bar would create individual liability for conduct that violated only Title VII's retaliation provision. Their conduct was not found to violate any constitutional provision, or a statutory provision other than Title VII. Holding them individually responsible would be contrary to the holding of *Sheridan*. Therefore, individual defendants can only be held liable under § 1983 for retaliatory conduct that violates rights created by the Constitution or federal laws other than Title VII. A claim based on Title VII's retaliation provision does not meet this standard.

In sum, an employee cannot pursue retaliation claims against his supervisors under § 1983. As explained above, that is precisely what Slaughter is attempting to do. The Statement of Claim alleges that the Individual Defendants reassigned him to the Floater position; refused to remove his disciplinary records from the file; failed to investigate his complaints about white officers; and assigned him to the employee entrance post. Indeed, Plaintiff's brief acknowledges that Slaughter's internal complaints alleged retaliation. Accordingly, the § 1983 claims against the Individual Defendants in Counts 3-6 are not cognizable and Rustin, McCall, Donis and Emerick will be removed as party Defendants to this case.

Conclusion

Defendants have, again, failed to comply with Local Rule 56 and their summary judgment motion will be stricken. However, in the exercise of its gatekeeping function to prevent the waste of judicial resources and the time of prospective jurors on claims that have no legal merit, and after appropriate notice and an opportunity to be heard, the Court will enter summary judgment pursuant to Fed. R. Civ. P. 56(f) in favor of Defendants and against Plaintiff on virtually all claims. The Individual Defendants will be dismissed as parties. One narrow retaliation theory against the County will proceed to trial.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK SLAUGHTER,** | ) |
| **Plaintiff,** | ) |
| | ) |
| v | )    **2:11-cv-880** |
| **COUNTY OF ALLEGHENY, ALLEGHENY** | ) |
| **COUNTY JAIL**, **RAMON RUSTIN** *in his Official and* | ) |
| *individual capacities;* **ROBYN MCCALL** *in her official* | ) |
| *and individual capacities;* **JAMES DONIS** *in his official* | ) |
| *and individual capacities; and* **WILLIAM EMERICK** | ) |
| *in his official and individual capacities* | ) |
| **Defendants.** | ) |

## ORDER OF COURT

AND NOW, this 1st day of October 2013, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that THE

MOTION TO STRIKE DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

(ECF No. 49) is **GRANTED**, and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(ECF No. 47) is **DENIED.**

Nevertheless, the Court will enter Summary Judgment pursuant to Fed. R. Civ. P. 56(f),

as follows:

1. Summary Judgment is entered in favor of Defendants and against Plaintiff as to his

   claims of race discrimination in Counts I and II;

2. Summary Judgment is entered in favor of Defendants and against Plaintiff as to his

   claims of retaliation in Counts I and II, except as to his allegation that he was

   reassigned to the floater position in retaliation for his internal complaints about

   corrections officer Ryan;

16

3. Summary Judgment is entered in favor of Defendants Rustin, McCall, Donis and Emerick and against Plaintiff as to Counts III, IV, V and VI and said Individual Defendants are dismissed as parties.

The caption shall be amended as follows:

| | | |
|---|---|---|
| **FRANK SLAUGHTER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:11-cv-880** |
| | ) | |
| **COUNTY OF ALLEGHENY,** | ) | |
| **Defendant.** | ) | |

Plaintiff shall file a pretrial statement strictly limited to the retaliation claim on or before October 21, 2013.

The County shall file a pretrial statement in response on or before November 11, 2013.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:    **Susan E. Mahood, Esquire**
Email: susanemahood@yahoo.com

        **J. Deron Gabriel, Esquire**
Email: dgabriel@county.allegheny.pa.us